UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

ADMIRALTY DIVISION

CASE NO. **09-21508**

PRAMS WATER SHIPPING COMPANY, INC., **CIV-JORDAN** / McALILEY

Plaintiff,

vs.

SALCO SHIPPING CORP. a/k/a SALCO SHIPPING CO. a/k/a SALCO SHIPPING INC., THE SALVADOR GROUP, LTD. and SALVADOR & COMPANY INSURANCE AGENCY,

Defendant.

FILED by AJS D.C.
JUN - 4 2009
STEVEN M. LARIMORE
CLERK U S DIST. CT
S. D. of FLA. - MIAMI

______________________________________/

## COMPLAINT

COMES NOW the Plaintiff, PRAMS WATER SHIPPING COMPANY, INC., by and through its undersigned attorneys, and sues the Defendants, SALCO SHIPPING CORP. a/k/a SALCO SHIPPING CO. a/k/a SALCO SHIPPING INC., THE SALVADOR GROUP, LTD. and SALVADOR & COMPANY INSURANCE AGENCY and alleges as follows:

1. This is a claim of Admiralty and Maritime Jurisdiction as hereinafter more fully appears, and is an Admiralty and Maritime Claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

2. At all times material hereto, the Plaintiff, PRAMS WATER SHIPPING COMPANY, INC., is a Florida corporation, and the owner of the M/V DURGA MAYA.

3. The Defendant, SALCO SHIPPING CORP. a/k/a SALCO SHIPPING CO. a/k/a SALCO SHIPPING INC. (hereinafter referred to as "SALCO") is upon information

and belief, a Massachusetts corporation doing business in Miami-Dade County, Florida and was and is the charterer of the M/V DURGA MAYA.

4. The Defendants, THE SALVADOR GROUP, LTD. and SALVADOR & COMPANY INSURANCE AGENCY, (jointly referred to as SALVADOR) are Massachusetts corporations doing business in Miami-Dade County, Florida and which guaranteed and/or are otherwise responsible for the debts of the Defendant, SALCO.

**COUNT I – Breach of Charter**

5. On or about October 10, 2008, the Plaintiff entered into a Time Charter Party agreement with Defendant, SALCO, whereby Defendant chartered the M/V DURGA MAYA for two years with Charterer's option for one additional year. See a copy of the Time Charter Party attached hereto as Exhibit "A."

6. SALVADOR provided a written guarantee of the debts of SALCO arising out of the subject Time Charter Party. See Exhibit "B".

7. That Defendants have failed to pay in full the charges owed for charter hire and expenses of the said vessel. See Plaintiff's Statement of Account attached hereto as Exhibit "C" setting forth the balance owed by Defendant in the amount of $587,916.39 through June 7, 2009, of which the Plaintiff has demanded payment of and the Defendant has refused to pay.

8. Pursuant to the terms of the Time Charter, the rate of hire is $3,900 per day. Accordingly, the balance owed by the Defendants increases each additional day by $3,900.00.

9. Furthermore, within the terms of the Time Charter the Charterer is to pay for all bunkers and port charges which the Defendant has failed to pay in full.

WHEREFORE, the Plaintiff, PRAMS WATER SHIPPING COMPANY, INC., prays that judgment be entered against the Defendants, SALCO SHIPPING CORP. a/ka/ SALCO SHIPPING, INC., a/k/a SALCO SHIPPING CO., THE SALVADOR GROUP, LTD. and SALVADOR & COMPANY INSURANCE AGENCY., jointly and severally, in the amount $587,916.39, plus any ongoing charter hire and expenses together with prejudgment interest, costs and reasonable attorney's fees and any other relief the Court deems just and proper.

June 3, 2009
Miami, Florida

Respectfully submitted,

By: ______________________

MICHAEL C. BLACK, ESQUIRE
F.B.N. 0056162
e-mail: mblack@marlaw.com
CASSIDY & BLACK, P.A.
8370 West Flagler Street, Suite 252
Miami, Florida 33144
Telephone: (305) 559-4962
Facsimile: (305) 559-2163
Attorneys for Plaintiff, PRAMS WATER SHIPPING COMPANY, INC.

Code Name: **"NYPE 93"**
**Recommended by:**
**The Baltic and International Maritime Council (BIMCO)**
**The Federation of National Associations of Ship Brokers and Agents (FONASBA)**

# TIME CHARTER©

New York Produce Exchange Form

*Issued by the Association of Ship Brokers and Agents (U.S.A.), Inc.*

November 6th, 1913 - Amended October 20th, 1921; August 6th, 1931; October 3rd, 1946; Revised June 12th, 1981; September 14th 1993.

**THIS CHARTER PARTY,** made and concluded in ............Westport, Connecticut.......................... this ..........................................day of......IO October..............~~19~~......2008..........................

Between.........Prams Water Shipping Company Inc. 161551 SW 117th Avenue, Suite B-6, Miami, FL. 33177 USA

Owners of the Vessel described below, and.............SalCo Shipping Co. or assignees 111 Main Street, Bridgewater, Ma. 02324, USA
..........Salco Shipping Co. is disponent Owner

Charterers. , However charterers always remaining responsible for their duties and payment of hire.

**Description of Vessel**

Name .......DURGA MAYA.......................... Flag Sierra Leone...... Built ........1970..........(year).
Port and number of Registry .......................Freetown..................................
Classed............PSR...............................in.........Panama..................................
Deadweight.........2920...........................~~long~~*/metric* tons (cargo and bunkers, including freshwater and stores ~~not exceeding~~ .......xxxx................~~long~~*/metric* tons) on a salt water draft of ...4.575M.......... on summer freeboard.
Capacity .......134,370..................... cubic feet grain........120,429...........cubic feet bale space.
Tonnage..............1705.................. GT/GRT.
Speed about ....10........... knots, fully laden, in good weather conditions up to and including maximum Force ...3........ on the Beaufort wind scale, on a consumption of about ......4.9...............~~long~~*/metric* tons of..........MGO......................

** Delete as appropriate.*
*For further description see Appendix "A" (if applicable)*

1. **Duration**

The Owners agree to let and the Charterers agree to hire the Vessel from the time of delivery for a period of.................................................. Two Years with charterers option for one additional year at the same hire price/rates ..............................................within below mentioned trading limits.

Form 30-138 Printed and Sold by UNZCO 190 Baldwin Ave., Jersey City, NJ 07306 (800) 631-3098 Telefax (201) 795-0695 By authority of the Association of Ship Brokers and Agents USA (ASBA), New York, NY.

Exhibit "A"

May 08 09 03:01p MANOHAR MAHAJAN 3052517889 p.4

2. **Delivery**

The Vessel shall be placed at the disposal of the Charterers at Owner's berth, belem Do Para, Brazil, any time day and night, Saturday, Sunday & Holidays included. The Vessel on her delivery shall be ready to receive cargo with clean-swept holds and tight, staunch, strong and in every way fitted for ordinary cargo service, having water ballast and with sufficient power to operate ~~all~~ three cargo-handling gear simultaneously.

The Owners shall give the Charterers not less than 10 days notice of expected date of delivery.

3. **On-Off Hire Survey**

Prior to delivery and redelivery the parties ~~shall~~ may, unless otherwise agreed, each appoint surveyors, or their representativ for their respective accounts, who shall not later than at first loading port/last discharging port respectively, conduct joint on-hire/off-hire surveys, for the purpose of ascertaining quantity of bunkers on board and the condition of the Vessel. A single report shall be prepared on each occasion and signed by each surveyor, without prejudice to his right to file a separate report setting forth items upon which the surveyors cannot agree. If either party fails to have a representative attend the survey and sign the joint survey report, such party shall nevertheless be bound for all purposes by the findings in any report prepared by the other party. On-hire survey shall be on Charterers' time and off-hire survey on Owners' time.

4. **Dangerous Cargo/Cargo Exclusions**

(a) The Vessel shall be employed in carrying lawful merchandise excluding any goods of a dangerous, injurious, flammable or corrosive nature unless carried in accordance with the requirements or recommendations of the competent authorities of the country of the Vessel's registry and of ports of shipment and discharge and of any intermediate countries or ports through whose waters the Vessel must pass. a Without prejudice to the generality of the foregoing, in addition the following are specifically excluded: livestock of any description, arms, ammunition, explosives, nuclear and radioactive materials, a and preapproved by the owners // and its waste, calcium carbid naphtha, motor spirit, ammonimm nitrate, bulk salt, bulk cement, tar, carbon black, copra, corrossive cargos, pitch, hides sponge iron, acids, motor blocks

(b) If IMO-classified cargo is agreed to be carried, the amount of such cargo shall be limited to ~~pre-agreed quantons~~ ites and the Charterers shall provide the Master with any evidence he may reasonably require to show that the cargo is packaged, labelled, loaded and stowed in accordance with IMO regulations, failing which the Master is entitled to refuse such cargo or, if already loaded, to unload it at the Charterers' risk and expense.

Form 30-138 Printed and Sold by UNZ&CO 190 Baldwin Ave., Jersey City, NJ 07306 (800) 631-3098 Telefax (201) 795-0695 By authority of the Association of Ship Brokers and Agents USA (ASBA), New York, NY.



May 08 09 03:01p MANOHAR MAHAJAN 3052517889 p.5

5. **Trading Limits**

The Vessel shall be employed in such lawful trades between safe ports and safe places within........Gulf Coast USA, East Coast USA, no further north than Jacksonville FL,USA, to North Coast South America, East ........excluding Coast South America but no further south than Natal Brazil. Excluding Cuba and other countries sanctioned by the US or UN during the charters currency........as the Charterers shall direct.
It is agreed that the vessel shall not call on US ports before drydocking is completed.

6. **Owners to Provide**

The Owners shall provide and pay for the insurance of the Vessel, except as otherwise provided, and for all provisions, cabin, deck, engine-room and other necessary stores, including boiler water; shall pay for wages, consular shipping and discharging fees of the crew and charges for port services pertaining to the crew; shall maintain the Vessel's class and keep her in a thoroughly efficient state in hull, machinery and equipment for and during the service, and have a full complement of officers and crew.

7. **Charterers to Provide**

The Charterers, while the Vessel is on hire, shall provide and pay for all the bunkers except as otherwise agreed; shall pay for port charges (including compulsory watchmen and cargo watchmen and compulsory garbage disposal), all communication expenses pertaining to the Charterers' business at cost, pilotages, towages, agencies, commissions, consular charges (except those pertaining to individual crew members or flag of the Vessel), and all other usual expenses except those stated in Clause 6, but when the Vessel puts into a port for causes for which the Vessel is responsible (other than by stress of weather), then all such charges incurred shall be paid by the Owners. Fumigations ordered because of illness of the crew shall be for the Owners' account. Fumigations ordered because of cargoes carried or ports visited while the Vessel is employed under this Charter Party shall be for the Charterers' account. All other fumigations shall be for the Charterers'account after the Vessel has been on charter for a continuous period of six months or more.

The Charterers shall provide and pay for necessary dunnage and also any extra fittings requisite for a special trade or unusual cargo, but the Owners shall allow them the use of any dunnage already aboard the Vessel. Prior to redelivery the Charterers shall remove their dunnage and fittings at their cost and in their time.

8. **Performance of Voyages**

(a) The Master shall perform the voyages with due despatch, and shall render all customary assistance with the Vessel's crew. The Master shall be conversant with the English language and (although appointed by the Owners) shall be under the orders and directions of the Charterers as regards employment and agency; and the Charterers shall perform all cargo handling, including but not limited to loading, stowing, trimming, lashing, securing, dunnaging, unlashing, discharging, and tallying, at their risk and expense, under the supervision of the Master.

(b) If the Charterers shall have reasonable cause to be dissatisfied with the conduct of the Master or officers, the Owners shall, on receiving particulars of the complaint, investigate the same, and, if necessary, make a change in the appointments.

Form 30-138 Printed and Sold by UNZ&Co 190 Baldwin Ave., Jersey City, NJ 07306 (800) 631-3098 Telefax (201) 795-0695 By authority of the Association of Ship Brokers and Agents USA (ASBA), New York, NY.



9. **Bunkers**

(a) The Charterers on delivery, and the Owners on redelivery, shall take over and pay for all fuel and diesel oil remaining on board the Vessel as hereunder. The Vessel shall be delivered with: ..................NIL.................. long*/metric* tons of fuel oil at the price of .....NIL.............. per ton; ................NIL..............tons of diesel oil at the price of ........NIL........... per ton. The vessel shall be redelivered with: ........NIL............... tons of fuel oil at the price of...........NIL................. per ton; Sufficient to reach bunkers port tons of diesel oil at the price of as per market by invoice..... per ton.

** Same tons apply throughout this clause.*

(b) The Charterers shall supply bunkers of a quality suitable for burning in the Vessel's engines and auxiliaries and which conform to the specification(s) as set out in Appendix A.

The Owners reserve their right to make a claim against the Charterers for any damage to the main engines or the auxiliaries caused by the use of unsuitable fuels or fuels not complying with the agreed specification(s). Additionally, if bunker fuels supplied do not conform with the mutually agreed specification(s) or otherwise prove unsuitable for burning in the Vessel's engines or auxiliaries, the Owners shall not be held responsible for any reduction in the Vessel's speed performance and/or increased bunker consumption, nor for any time lost and any other consequences.

10. **Rate of Hire/Redelivery Areas and Notices**

The Charterers shall pay for the use and hire of the said Vessel at the rate of $...3,900 before dry dock 4,200 after dry dock U.S. currency, daily, ~~or $xxxxxxxxxxxxxxxxx U.S. currency per ton on the Vessel's total deadweight carrying capacity, including bunkers and stores, on xxxxxxxxxxxxxxx summer freeboard, per 30 days~~, commencing on and from the day of her delivery, as aforesaid, and at and after the same rate for any part of a month; hire shall continue until the hour of the day of her redelivery in like good order and condition, ordinary wear and tear excepted, to the Owners (unless Vessel lost) at..owners nominated bank in Miami, FL. USA. The vessel shall be redelivered to the owners,DOP, one safe caribbean port, inc. COM, NESA within within the trading limits, at charters option unless otherwise mutually agreed.

The Charterers shall give the Owners not less than ..........30.......... days notice of the Vessel's expected date and probable port of redelivery.

For the purpose of hire calculations, the times of delivery, redelivery or termination of charter shall be adjusted to GMT.

11. **Hire Payment** USD $117,000.00 in advance before delivery

(a) ***Payment*** and thereafter in advance every 15 days after the first 30 days of contract time.

Payment of Hire shall be made so as to be received by the Owners or their designated payee in ........Miami, Florida USA........, viz.......Wachovia BAnk........ ABA# 063000021, ACCT # 9980597993, Beneficiary Prams Water Shipping Co. Inc., ........................................................in



May 08 09 03:02p MANOHAR MAHAJAN 3052517889 p.7

............................................................ currency or in United States Currency, in funds available to the Owners on the due date, 15 days in advance, and for the last month or part of same the approximate amount of hire, and should same not cover the actual time, hire shall be paid for the balance day by day as it becomes due, if so required by the Owners. Failing the punctual and regular payment of the hire, or on any fundamental breach whatsoever of this Charter Party, the Owners shall be at liberty to withdraw the Vessel from the service of the Charterers without prejudice to any claims they (the Owners) may otherwise have on the Charterers.

At any time after the expiry of the grace period provided in Sub-clause 11 (b) hereunder and while the hire is outstanding, the Owners shall, without prejudice to the liberty to withdraw, be entitled to withhold the performance of any and all of their obligations hereunder and shall have no responsibility whatsoever for any consequences thereof, in respect of which the Charterers hereby indemnify the Owners, and hire shall continue to accrue and any extra expenses resulting from such withholding shall be for the Charterers' account.

(b) *Grace Period*

Where there is failure to make punctual and regular payment of hire due to oversight, negligence, errors or omissions on the part of the Charterers or their bankers, the Charterers shall be given by the Owners .....2.... clear banking days (as recognized at the agreed place of payment) written notice to rectify the failure, and when so rectified within those ...2...... days following the Owners' notice, the payment shall stand as regular and punctual.

Failure by the Charterers to pay the hire within ..5....... days of their receiving the Owners' notice as provided herein, shall entitle the Owners to withdraw as set forth in Sub-clause 11 (a) above Owners action of non withdrawl shall not be deemed to be a waiver of their rights nor shall it set a prexwswnr

(c) *Last Hire Payment*

Should the Vessel be on her voyage towards port of redelivery at the time the last and/or the penultimate payment of hire is/are due, said payment(s) is/are to be made for such length of time as the Owners and the Charterers may agree upon as being the estimated time necessary to complete the voyage, and taking into account bunkers actually on board, to be taken over by the Owners and estimated disbursements for the Owners' account before redelivery. Should same not cover the actual time, hire is to be paid for the balance, day by day, as it becomes due. When the Vessel has been redelivered, any difference is to be refunded by the Owners or paid by the Charterers, as the case may be. within 5 days of presentation of final statement from one party to the other

(d) *Cash Advances*

Cash for the Vessel's ordinary disbursements at any port may be advanced by the Charterers, as required by the Owners, subject to 2½ percent commission and such advances shall be deducted from the hire. The Charterers, however, shall in no way be responsible for the application of such advances.

12. **Berths**

The Vessel shall be loaded and discharged in any safe dock or at any safe berth or safe place that Charterers or their agents may direct, provided the Vessel can safely enter, lie and depart always afloat at any time of tide.

Form 30-138 Printed and Sold by UNZCO 190 Baldwin Ave., Jersey City, NJ 07306 (800) 631-3098 Telefax (201) 795-0695 By authority of the Association of Ship Brokers and Agents USA (ASBA), New York, NY.

May 08 09 03:03p MANOHAR MAHAJAN 3052517889 p.8

13. **Spaces Available**

(a) The whole reach of the Vessel's holds, decks, and other cargo spaces (not more than she can reasonably and safely stow and carry), also accommodations for supercargo, if carried, shall be at the Charterers' disposal, reserving only proper and sufficient space for the Vessel's officers, crew, tackle, apparel, furniture, provisions, stores and fuel.

(b) In the event of deck cargo being carried, the Owners are to be and are hereby indemnified by the Charterers for any loss and/or damage and/or liability of whatsoever nature caused to the Vessel as a result of the carriage of deck cargo and which would not have arisen had deck cargo not been loaded.

section 13(b) includes cargo owners

14. **Supercargo and Meals**

in sofar as accomodations permit

The Charterers are entitled to appoint a supercargo, who shall accompany the Vessel at the Charterers' risk and see that voyages are performed with due despatch. He is to be furnished with free accommodation and same fare as provided for the Master's table, the Charterers paying at the rate of ......USD$10....... per day. The Owners shall victual pilots and customs officers, and also, when authorized by the Charterers or their agents, shall victual tally clerks, stevedore's foreman, etc., Charterers paying at the rate of ......USD$7...... per meal for all such victualling. Carriage of supercargo shall be at charterers risk, including and diviatio or diversions for medical risk or reason

15. **Sailing Orders and Logs**

The Charterers shall furnish the Master from time to time with all requisite instructions and sailing directions, in writing, in the English language, and the Master shall keep full and correct deck and engine logs of the voyage or voyages, which are to be patent to the Charterers or their agents, and furnish the Charterers, their agents or supercargo, when required, with a true copy of such deck and engine logs, showing the course of the Vessel, distance run and the consumption of bunkers. Any log extracts required by the Charterers shall be in the English language.

16. **Delivery/Cancelling**

If required by the Charterers, time shall not commence before ..21 October ...2008 and should the Vessel not be ready for delivery on or before..10..Nov. ...2008..... but not later than..24:00 hours, the Charterers shall have the option of cancelling this Charter Party.

***Extension of Cancelling***

If the Owners warrant that, despite the exercise of due diligence by them, the Vessel will not be ready for delivery by the cancelling date, and provided the Owners are able to state with reasonable certainty the date on which the Vessel will be ready, they may, at the earliest seven days before the Vessel is expected to sail for the port or place of delivery, require the Charterers to declare whether or not they will cancel the Charter Party. Should the Charterers elect not to cancel, or should they fail to reply within two days or by the cancelling date, whichever shall first occur, then the seventh day after the expected date of readiness for delivery as notified by the Owners shall replace the original cancelling date. Should the Vessel be further delayed, the Owners shall be entitled to require further declarations of the Charterers in accordance with this Clause.

Form 30-138 Printed and Sold by UNZCO 190 Baldwin Ave., Jersey City, NJ 07306 (800) 631-3098 Telefax (201) 795-0695 By authority of the Association of Ship Brokers and Agents USA (ASBA), New York, NY.



May 08 09 03:03p MANOHAR MAHAJAN 3052517889 p.9

17. **Off Hire**

In the event of loss of time from deficiency and/or default and/or strike of officers or crew, or deficiency of stores, fire, breakdown of, or damages to hull, machinery or equipment, grounding, detention by the arrest of the Vessel, (unless such arrest is caused by events for which the Charterers, their servants, agents or subcontractors are responsible), or detention by average accidents to the Vessel or cargo unless resulting from inherent vice, quality or defect of the cargo, drydocking for the purpose of examination or painting bottom, or by any other similar cause preventing the full working of the Vessel, the payment of hire and overtime, if any, shall cease for the time thereby lost. Should the Vessel deviate or put back during a voyage, contrary to the orders or directions of the Charterers, for any reason other than accident to the cargo or where permitted in lines 257 to 258 hereunder, the hire is to be suspended from the time of her deviating or putting back until she is again in the same or equidistant position from the destination and the voyage resumed therefrom. All bunkers used by the Vessel while off hire shall be for the Owners' account. In the event of the Vessel being driven into port or to anchorage through stress of weather, trading to shallow harbors or to rivers or ports with bars, any detention of the Vessel and/or expenses resulting from such detention shall be for the Charterers' account. If upon the voyage the speed be reduced by defect in, or breakdown of, any part of her hull, machinery or equipment, the time so lost, and the cost of any extra bunkers consumed in consequence thereof, and all extra proven expenses may be deducted from the hire, only after expressed approval of the owner.

18. **Sublet**

Unless otherwise agreed, the Charterers shall have the liberty to sublet the Vessel for all or any part of the time covered by this Charter Party, but the Charterers remain responsible for the fulfillment of this Charter Party.

19. **Drydocking** Owners shall have the right to dry dock the vessel any time during the first four months of the charter and thereafter as per sub-clause 19(a).

~~The Vessel was last drydocked~~ ......................................................

*(a) The Owners shall have the option to place the Vessel in drydock during the currency of this Charter at a convenient time and place, to be mutually agreed upon between the Owners and the Charterers, for bottom cleaning and painting and/or repair as required by class or dictated by circumstances.

~~*(b) Except in case of emergency no drydocking shall take place during the currency of this Charter Party.~~

* *Delete as appropriate*

20. **Total Loss**

Should the Vessel be lost, money paid in advance and not earned (reckoning from the date of loss or being last heard of) shall be returned to the Charterers at once.

21. **Exceptions**

The act of God, enemies, fire, restraint of princes, rulers and people, and all dangers and accidents of the seas, rivers, machinery, boilers, and navigation, and errors of navigation throughout this Charter, always mutually excepted.

Form 30-138 Printed and Sold by UNZCO 190 Baldwin Ave., Jersey City, NJ 07306 (800) 631-3098 Telefax (201) 795-0895 By authority of the Association of Ship Brokers and Agents USA (ASBA), New York, NY.



May 08 09 03:04p MANOHAR MAHAJAN 3052517889 p.10

22. **Liberties**

The Vessel shall have the liberty to sail with or without pilots, to tow and to be towed, to assist vessels in distress, and to deviate for the purpose of saving life and property.

23. **Liens**

The Owners shall have a lien upon all cargoes and all sub-freights and/or sub-hire for any amounts due under this Charter Party, including general average contributions, and the Charterers shall have a lien on the Vessel for all monies paid in advance and not earned, and any overpaid hire or excess deposit to be returned at once.

The Charterers will not directly or indirectly suffer, nor permit to be continued, any lien or encumbrance, which might have priority over the title and interest of the Owners in the Vessel. The Charterers undertake that during the period of this Charter Party, they will not procure any supplies or necessaries or services, including any port expenses and bunkers, on the credit of the Owners or in the Owners' time.

24. **Salvage**

All derelicts and salvage shall be for the Owners' and the Charterers' equal benefit after deducting Owners' and Charterers' expenses and crew's proportion.

25. **General Average**

General average shall be adjusted according to York-Antwerp Rules 1974, as amended 1990, or any subsequent modification thereof, in ............US.................... and settled in ..........US.................. currency.

The Charterers shall procure that all bills of lading issued during the currency of the Charter Party will contain a provision to the effect that general average shall be adjusted according to York-Antwerp Rules 1974, as amended 1990, or any subsequent modification thereof and will include the "New Jason Clause" as per Clause 31.

Time charter hire shall not contribute to general average.

26. **Navigation**

Nothing herein stated is to be construed as a demise of the Vessel to the Time Charterers. The Owners shall remain responsible for the navigation of the Vessel, acts of pilots and tug boats, insurance, crew, and all other matters, same as when trading for their own account.

27. **Cargo Claims**

Cargo claims as between the Owners and the Charterers shall be settled in accordance with the Inter-Club New York Produce Exchange Agreement of February 1970, as amended May, 1984, or any subsequent modification or replacement thereof.

Form 30-138 Printed and Sold by UNZ&CO 190 Baldwin Ave., Jersey City, NJ 07306 (800) 631-3098 Telefax (201) 795-0695 By authority of the Association of Ship Brokers and Agents USA (ASBA), New York, NY.



28. Cargo Gear and Lights

The Owners shall maintain the cargo handling gear of the Vessel which is as follows:......................... ...................................4..x..5MT..single..swinging..derricks..of..which..3..to......... be able to work simultaneously......................................................................................... .......................................................................................................................... providing gear (for all derricks or cranes) capable of lifting capacity as described. The Owners shall also provide on the Vessel for night work lights as on board, but all additional lights over those on board shall be at the Charterers' expense. The Charterers shall have the use of any gear on board the Vessel. If required by the Charterers, the Vessel shall work night and day and all cargo handling gear shall be at the Charterers' disposal during loading and discharging. In the event of disabled cargo handling gear, or insufficient power to operate the same, the Vessel is to be considered to be off hire to the extent that time is actually lost to the Charterers and the Owners to pay stevedore stand-by charges occasioned thereby, unless such disablement or insufficiency of power is caused by the Charterers' stevedores. x If ~~required by the Charterers~~, the Owners ~~shall~~ may bear the cost of hiring shore gear in lieu thereof, in which case the Vessel shall remain on hire.

29. Crew Overtime

In lieu of any overtime payments to officers and crew for work ordered by the Charterers or their agents, the Charterers shall pay the Owners, concurrently with the hire ..........................0.............per month or pro rata.

30. Bills of Lading

(a) The Master shall sign the bills of lading or waybills for cargo as presented in conformity with mates or tally clerk's receipts. However, the Charterers may sign bills of lading or waybills on behalf of the Master, with the Owner's prior written authority, always in conformity with mates or tally clerk's receipts, and only upon Owner's express approval for each case. Charterers shall submit to the Owners such bills of lading or way bills for their approval.

(b) All bills of lading or waybills shall be without prejudice to this Charter Party and the Charterers shall indemnify the Owners against all consequences or liabilities which may arise from any inconsistency between this Charter Party and any bills of lading or waybills signed by the Charterers or by the Master at their request.

(c) Bills of lading covering deck cargo shall be claused: "Shipped on deck at Charterers', Shippers' and Receivers' risk, expense and responsibility, without liability on the part of the Vessel, or her Owners for any loss, damage, expense or delay howsoever caused."

31. Protective Clauses

This Charter Party is subject to the following clauses all of which are also to be included in all bills of lading or waybills issued hereunder:

(a) CLAUSE PARAMOUNT

"This bill of lading shall have effect subject to the provisions of the Carriage of Goods by Sea Act of the United States, the Hague Rules, or the Hague-Visby Rules, as applicable, or such other similar national legislation as may mandatorily apply by virtue of origin or destination of the bills of lading, which shall be deemed to be incorporated herein and nothing herein contained shall be deemed a surrender by the



May 08 09 03:08p MANOHAR MAHAJAN 3052517889 p.2

carrier of any of its rights or immunities or an increase of any of its responsibilities or liabilities under said applicable Act. If any term of this bill of lading be repugnant to said applicable Act to any extent, such term shall be void to that extent, but no further."

and

(b) BOTH-TO-BLAME COLLISION CLAUSE
"If the ship comes into collision with another ship as a result of the negligence of the other ship and any act, neglect or default of the master, mariner, pilot or the servants of the carrier in the navigation or in the management of the ship, the owners of the goods carried hereunder will indemnify the carrier against all loss or liability to the other or non-carrying ship or her owners insofar as such loss or liability represents loss of, or damage to, or any claim whatsoever of the owners of said goods, paid or payable by the other or non-carrying ship or her owners to the owners of said goods and set off, recouped or recovered by the other or non-carrying ship or her owners as part of their claim against the carrying ship or carrier.

The foregoing provisions shall also apply where the owners, operators or those in charge of any ships or objects other than, or in addition to, the colliding ships or objects are at fault in respect to a collision or contact."

and

(c) NEW JASON CLAUSE
"In the event of accident, danger, damage or disaster before or after the commencement of the voyage resulting from any cause whatsoever, whether due to negligence or not, for which, or for the consequences of which, the carrier is not responsible, by statute, contract, or otherwise, the goods, shippers, consignees, or owners of the goods shall contribute with the carrier in general average to the payment of any sacrifices, losses, or expenses of a general average nature that may be made or incurred, and shall pay salvage and special charges incurred in respect of the goods.

If a salving ship is owned or operated by the carrier, salvage shall be paid for as fully as if salving ship or ships belonged to strangers. Such deposit as the carrier or his agents may deem sufficient to cover the estimated contribution of the goods and any salvage and special charges thereon shall, if required, be made by the goods, shippers, consignees or owners of the goods to the carrier before delivery."

and

(d) U.S. TRADE - DRUG CLAUSE
"In pursuance of the provisions of the U.S. Anti Drug Abuse Act 1986 or any re-enactment thereof, the Charterers warrant to exercise the highest degree of care and diligence in preventing unmanifested narcotic drugs and marijuana to be loaded or concealed on board the Vessel.

Non-compliance with the provisions of this clause shall amount to breach of warranty for consequences of which the Charterers shall be liable and shall hold the Owners, the Master and the crew of the Vessel harmless and shall keep them indemnified against all claims whatsoever which may arise and be made against them individually or jointly. Furthermore, all time lost and all expenses incurred, including fines, as a result of the Charterers' breach of the provisions of this clause shall be for the Charterer's account and the Vessel shall remain on hire.

Form 30-138 Printed and Sold by UNZCO 190 Baldwin Ave., Jersey City, NJ 07306 (800) 631-3098 Telefax (201) 795-0095 By authority of the Association of Ship Brokers and Agents USA (ASBA), New York, NY.



May 06 09 04:03p MANOHAR MAHAJAN 3052517889 p.1

Should the Vessel be arrested as a result of the Charterers' non-compliance with the provisions of this clause, the Charterers shall at their expense take all reasonable steps to secure that within a reasonable time the Vessel is released and at their expense put up the bails to secure release of the Vessel.

The Owners shall remain responsible for all time lost and all expenses incurred, including fines, in the event that unmanifested narcotic drugs and marijuana are found in the possession or effects of the Vessel's personnel."

and

(e) WAR CLAUSES

"(i) No contraband of war shall be shipped. The Vessel shall not be required, without the consent of the Owners, which shall not be unreasonably withheld, to enter any port or zone which is involved in a state of war, warlike operations, or hostilities, civil strife, insurrection or piracy whether there be a declaration of war or not, where the Vessel, cargo or crew might reasonably be expected to be subject to capture, seizure or arrest, or to a hostile act by a belligerent power (the term "power" meaning any de jure or de facto authority or any purported governmental organization maintaining naval, military or air forces).

(ii) If such consent is given by the Owners, the Charterers will pay the provable additional cost of insuring the Vessel against hull war risks in an amount equal to the value under her ordinary hull policy but not exceeding a valuation of.....USD2.0 MM...................... In addition, the Owners may purchase and the Charterers will pay for war risk insurance on ancillary risks such as loss of hire, freight disbursements, total loss, blocking and trapping, etc. If such insurance is not obtainable commercially or through a government program, the Vessel shall not be required to enter or remain at any such port or zone.

(iii) In the event of the existence of the conditions described in (i) subsequent to the date of this Charter, or while the Vessel is on hire under this Charter, the Charterers shall, in respect of voyages to any such port or zone assume the provable additional cost of wages and insurance properly incurred in connection with master, officers and crew as a consequence of such war, warlike operations or hostilities.

(iv) Any war bonus to officers and crew due to the Vessel's trading or cargo carried shall be for the Charterers' account."

32. <u>War Cancellation</u>

In the event of the outbreak of war (whether there be a declaration of war or not) between any two or more of the following countries:..........................................................................................

..........................................................................................

..........................32 not applicable..........................

..........................................................................................

either the Owners or the Charterers may cancel this Charter Party. Whereupon, the Charterers shall redeliver the Vessel to the Owners in accordance with Clause 10; if she has cargo on board, after discharge thereof at destination, or, if debarred under this Clause from reaching or entering it, at a near open and safe port as directed by the Owners; or, if she has no cargo on board, at the port at which she then is; or, if at sea, at a near open and safe port as directed by the Owners. In all cases hire shall continue to be paid in accordance with Clause 11 and except as aforesaid all other provisions of this Charter Party shall apply until redelivery.

Form 30-138 Printed and Sold by UNZCO 190 Baldwin Ave., Jersey City, NJ 07306 (800) 631-3098 Telefax (201) 795-0695 By authority of the Association of Ship Brokers and Agents USA (ASBA), New York, NY.



May 08 09 04:02p MANOHAR MAHAJAN 3052517889 p.2

33. **Ice**

The Vessel shall not be required to enter or remain in any icebound port or area, nor any port or area where lights or lightships have been or are about to be withdrawn by reason of ice, nor where there is risk that in the ordinary course of things the Vessel will not be able on account of ice to safely enter and remain in the port or area or to get out after having completed loading or discharging. Subject to the Owners' prior approval the Vessel is to follow ice-breakers when reasonably required with regard to her size, construction and ice class.

34. **Requisition**

Should the Vessel be requisitioned by the government of the Vessel's flag during the period of this Charter Party, the Vessel shall be deemed to be off hire during the period of such requisition, and any hire paid by the said government in respect of such requisition period shall be retained by the Owners. The period during which the Vessel is on requisition to the said government shall count as part of the period provided for in this Charter Party.

If the period of requisition exceeds ............12.................. months, either party shall have the option of cancelling this Charter Party and no consequential claim may be made by either party.

35. **Stevedore Damage**

Notwithstanding anything contained herein to the contrary, the Charterers shall pay for any and all damage to the Vessel caused by stevedores provided the Master has notified the Charterers and/or their agents in writing as soon as practical but not later than 48 hours after any damage is discovered. Such notice to specify the damage in detail and to invite Charterers to appoint a surveyor to assess the extent of such damage.

(a) In case of any and all damage(s) affecting the Vessel's seaworthiness and/or the safety of the crew and/or affecting the trading capabilities of the Vessel, the Charterers shall immediately arrange for repairs of such damage(s) at their expense and the Vessel is to remain on hire until such repairs are completed and if required passed by the Vessel's classification society.

(b) Any and all damage(s) not described under point (a) above shall be repaired at the Charterers' option, before or after redelivery concurrently with the Owners' work. In such case no hire and/or expenses will be paid to the Owners except and insofar as the time and/or the expenses required for the repairs for which the Charterers are responsible, exceed the time and/or expenses necessary to carry out the Owners' work. However, if owners so require, such damages shall be repaired before redelivery of the vessel.

36. **Cleaning of Holds**

The Charterers shall provide and pay extra for sweeping and/or washing and/or cleaning of holds between voyages and/or between cargoes provided such work can be undertaken by the crew and is permitted by local regulations, at the rate of USD 1,000.............~~per hold~~ lump sum.

In connection with any such operation, the Owners shall not be responsible if the Vessel's holds are not accepted or passed by the port or any other authority. The Charterers shall have the option to re-deliver the Vessel with unclean/unswept holds against a lumpsum payment of USD 1,000...in lieu of cleaning.

Form 30-138 Printed and Sold by UNZCO 190 Baldwin Ave., Jersey City, NJ 07306 (800) 631-3098 Telefax (201) 795-8895 By authority of the Association of Ship Brokers and Agents USA (ASBA), New York, NY.



May 08 09 03:16p Case 1:09-cv-21508-KAM MANOHAR MAHAJAN Document 1 Entered on FLSD Docket 06/04/2009 3052517889 Page 16 of 24 p.1

37. **Taxes**

Charterers to pay all local, State, National taxes and/or dues assessed on the Vessel or the Owners resulting from the Charterers' orders herein, whether assessed during or after the currency of this Charter Party including any taxes and/or dues on cargo and/or freights and/or sub-freights and/or hire (excluding taxes levied by the country of the flag of the Vessel or the Owners).

38. **Charterers' Colors**

The Charterers shall have the privilege of flying their own house flag and painting the Vessel with their own markings. The Vessel shall be repainted in the Owners' colors before termination of the Charter Party. Cost and time of painting, maintaining and repainting those changes effected by the Charterers shall be for the Charterers' account.

39. **Laid Up Returns**

The Charterers shall have the benefit of any return insurance premium receivable by the Owners from their underwriters as and when received from underwriters by reason of the Vessel being in port for a minimum period of 30 days if on full hire for this period or pro rata for the time actually on hire.

40. **Documentation**

The Owners shall provide any documentation relating to the Vessel that may be required to permit the Vessel to trade within the agreed trade limits, including, but not limited to certificates of financial responsibility for oil pollution, provided such oil pollution certificates are obtainable from the Owners' P & I club, valid international tonnage certificate, Suez and Panama tonnage certificates, valid certificate of registry and certificates relating to the strength and/or serviceability of the Vessel's gear.

41. **Stowaways**

(a) (i) The Charterers warrant to exercise due care and diligence in preventing stowaways in gaining access to the Vessel by means of secreting away in the goods and/or containers shipped by the Charterers.

(ii) If, despite the exercise of due care and diligence by the Charterers, stowaways have gained access to the Vessel by means of secreting away in the goods and/or containers shipped by the Charterers, this shall amount to breach of charter for the consequences of which the Charterers shall be liable and shall hold the Owners harmless and shall keep them indemnified against all claims whatsoever which may arise and be made against them. Furthermore, all time lost and all expenses whatsoever and howsoever incurred, including fines, shall be for the Charterers' account and the Vessel shall remain on hire.

(iii) Should the Vessel be arrested as a result of the Charterers' breach of charter according to sub-clause (a)(ii) above, the Charterers shall take all reasonable steps to secure that, within a reasonable time, the Vessel is released and at their expense put up bail to secure release of the Vessel.

Form 30-138 Printed and Sold by UNZCO 190 Baldwin Ave., Jersey City, NJ 07306 (800) 631-3098 Telefax (201) 795-0695 By authority of the Association of Ship Brokers and Agents USA (ASBA), New York, NY.

May 08 09 03:17p MANOHAR MAHAJAN 3052517889 p.2

(b) (i) If, despite the exercise of due care and diligence by the Owners, stowaways have gained access to the Vessel by means other than secreting away in the goods and/or containers shipped by the Charterers, all time lost and all expenses whatsoever and howsoever incurred, including fines, shall be for the Owners' account and the Vessel shall be off hire.

(ii) Should the Vessel be arrested as a result of stowaways having gained access to the Vessel by means other than secreting away in the goods and/or containers shipped by the Charterers, the Owners shall take all reasonable steps to secure that, within a reasonable time, the Vessel is released and at their expense put up bail to secure release of the Vessel.

42. Smuggling

In the event of smuggling by the Master, Officers and/or crew, the Owners shall bear the cost of any fines, taxes, or imposts levied and the Vessel shall be off hire for any time lost as a result thereof.
In the event of smuggling by the supercargo or charterers rep. the charterers shall remain responsible for all & costs, fines & expenses

43. Commissions

A commission of.....3.,75......... total percent is payable by the Vessel and the Owners to..........................
.......................................................................................................................
...........................................................to AIC Ships for division.........................
.......................................................................................................................
on hire earned and paid under this Charter, and also upon any continuation or extension of this Charter.

44. Address Commission

An address commission of ............0............ percent is payable to..............................................
.......................................................................................................................
.......................................................................................................................
..................................................on hire earned and paid under this Charter.

45. Arbitration

(a) NEW YORK
All disputes arising out of this contract shall be arbitrated at New York in the following manner, and subject to U.S. Law:

One Arbitrator is to be appointed by each of the parties hereto and a third by the two so chosen. Their decision or that of any two of them shall be final, and for the purpose of enforcing any award, this agreement may be made a rule of the court. The Arbitrators shall be commercial men, conversant with shipping matters. Such Arbitration is to be conducted in accordance with the rules of the Society of Maritime Arbitrators Inc.

For disputes where the total amount claimed by either party does not exceed US $ .....25,000.00** the arbitration shall be conducted in accordance with the Shortened Arbitration Procedure of the Society of Maritime Arbitrators Inc.

Form 30-138 Printed and Sold by UNZCO 190 Baldwin Ave., Jersey City, NJ 07306 (800) 631-3098 Telefax (201) 795-0695 By authority of the Association of Ship Brokers and Agents USA (ASBA), New York, NY.



May 08 09 03:17p MANOHAR MAHAJAN 3052517889 p.3

(b) LONDON

this subsection onto all not applicable

All disputes arising out of this contract shall be arbitrated at London and, unless the parties agree forthwith on a single Arbitrator, be referred to the final arbitrament of two Arbitrators carrying on business in London who shall be members of the Baltic Mercantile & Shipping Exchange and engaged in Shipping, one to be appointed by each of the parties, with power to such Arbitrators to appoint an Umpire. No award shall be questioned or invalidated on the ground that any of the Arbitrators is not qualified as above, unless objection to his action be taken before the award is made. Any dispute arising hereunder shall be governed by English Law.

For disputes where the total amount claimed by either party does not exceed US $ ......................** the arbitration shall be conducted in accordance with the Small Claims Procedure of the London Maritime Arbitrators Association.

* *Delete para (a) or (b) as appropriate*

** *Where no figure is supplied in the blank space this provision only shall be void but the other provisions of this clause shall have full force and remain in effect.*

If mutually agreed, clauses 46 to 47, both inclusive, as attached hereto are fully incorporated in this Charter Party.

46: At the end of the original or extended charter period, charterers shall have the first option to purchase the vessel at the then mutually agreeable price, terms and conditions. First option purchase arrangement may occur at any time that is mutually agreeable between the parties.

47: In any and all cases regarding any of the terms and conditions of this instrument where owner's approval is required for the actions and functions of the carterers, such approval will not be unreasonably withheld.

JOHN P. HOGAN, CFO
SALCO SHIPPING INC

M. R. Mahajan
Prano Maker Shipping Co. Inc.

[Stamp: ... SHIPPING CO. INC. email: pramsmm@worldnet.att.net PH: 305 251 7667 FX: 305 251 7689 FLORIDA USA]

DOUGLAS WALTER SALVADOR
NOTARY PUBLIC
My Commission Expires Aug. 6. 2010

Form 30-138 Printed and Sold by UNZCO 190 Baldwin Ave., Jersey City, NJ 07306 (800) 631-3098 Telefax (201) 795-0695 By authority of the Association of Ship Brokers and Agents USA (ASBA), New York, NY.



May 08 09 04:09p MANOHAR MAHAJAN 3052517889 p.6

**APPENDIX "A"**

To Charter Party dated ..........................................................................

Between ..........................................................................Owners

and .......................................................................... Charterers

**Further details of the Vessel:**

BLANK

Form 30-138 Printed and Sold by [illegible] 190 Baldwin Ave., Jersey City, NJ 07306 (800) 631-3088 Telefax (201) 795-0695 By authority of the Association of Ship Brokers and Agents USA (ASBA), New York, NY.



Salco

# HORAN

## ASSOCIATES

P.O. Box 474
South Easton, Ma. 02375

Mr. Jose Ramos
The Westmount Group
3900 NW 79th Ave, S-459
Miami, FL 33166

Captain Mahajan
16155 SW 117th Ave. Suite B6
Miami, FL. 33177

March 2, 2009

Re: SalCo Shipping Inc.

Dear Sirs:

This letter is to confirm that the performance of the charter party between Prams Water Shipping and Salco Shipping is quaranteed by the Salvador Group Ltd.

Respectfully Yours,

John P. Horan

Phone : 508-801-8664 Fax: 508-297-1332

Exhibit " B "

Salvador & Company
INSURANCE AGENCY
111 MAIN STREET • BRIDGEWATER, MA 02324
TELEPHONE 508-697-8366
FAX 508-697-5743
TOLL FREE 1-877-393-8366
www.salvadorandco.com

INSURANCE SERVICES
Life
Annuities
Accident and Health
Business
Group
Pension
Auto
Homeowners
Liability
Commercial

PAUL J. SALVADOR, CLU
WALTER (BILL) SALVADOR
MARK E. SALVADOR
CHRISTY L. ROBBINS
WILLIAM G. SALVADOR
DOUGLAS W. SALVADOR
KRISTINE J. FERNANDEZ

March 24, 2009

To Whom It May Concern:

Salvador & Company Insurance Agency Inc was established in 1979 to operate as an Insurance Agency & Brokerage company. This is structured as an "S" corporation and the owners are myself, and my brother Walter Salvador (Salvador Brothers). We have diversified into other business areas such as mortgages, financing, real estate, shipping and ocean transportation.

Under the shipping division, we have been transporting goods mainly in the Caribbean area and to meet this end we took an ownership interest in a small vessel m/v Laila I. Since the capacity of this vessel could not fully meet our demand we have been buying space from Prams Water Shipping Co. Inc on their vessel since last year and intend to continue doing same in the future. Our different divisions are all "S" corporations owned by Salvador Brothers and closely held as Salvador Group.

Paul Salvador
President

Salvador & Company

INSURANCE AGENCY

111 MAIN STREET • BRIDGEWATER, MA 02324
TELEPHONE 508-697-6366
FAX 508-697-5743
TOLL FREE 1-877-393-8366
www.salvadorandco.com

INSURANCE SERVICES
Life
Annuities
Accident and Health
Business
Group
Pension
Auto
Homeowners
Liability
Commercial

PAUL J. SALVADOR, CLU
WALTER (BILL) SALVADOR
MARK E. SALVADOR
CHRISTY L. ROBBINS
WILLIAM G. SALVADOR
DOUGLAS W. SALVADOR
KRISTINE J. FERNANDEZ

Ms. Angie Botero
CV Credit Inc.
P.O. Box 31-0606
Miami, Fl. 33231-0606

April 1, 2009

Dear Ms. Botero,

Please be advised that Mr. John P. Horan, CFO of Salvador & Company Insurance Agency, Inc. does have authority to sign documents on our behalf.

Respectfully Yours,

Paul J Salvador, President



**PRAMS WATER SHIPPING CO. INC**
16155 SW 117TH. AVE. SUITE B- 6, MIAMI FL 33177
Ph: (305) 251 7667 Fax (305) 251 7889
Email: prams@pramsmia.com

**SALVADOR & COMPANY COMPOSITE STATEMENT OF ACCOUNT**

DATE: 6/2/2009

CLIENT
SALCO SHIPPING CORP. & SALVADOR & COMPANY
111 MAIN STREET
BRIDGEWATER, MA. 02324

| DATE | ITEM | DEBIT | CREDIT | BALANCE |
|---|---|---|---|---|
| | | USD | USD | USD |
| 10/20/2008 | First Charter Hire Inv. 2008-10201 | 117,000.00 | | 117,000.00 |
| 10/24/2008 | Payment Wire Transfer | | 75,000.00 | 42,000.00 |
| 11/3/2008 | Payment Wire Transfer | | 42,000.00 | 0.00 |
| 12/3/2008 | Payment Wire Transfer | | 15,000.00 | (15,000.00) |
| 12/4/2008 | Payment Wire Transfer | | 2,800.00 | (17,800.00) |
| 12/9/2008 | 2nd. Charter Hire Inv. 0812-22 | 58,500.00 | | 40,700.00 |
| 12/17/2008 | Bunkers Invoice PWSI 0812 - 37 | 58,292.83 | | 98,992.83 |
| 12/24/2008 | 3rd. Charter Hire Inv. 0812-27 | 58,500.00 | | 157,492.83 |
| 1/8/2009 | 4th Charter Hire Inv. PWSI 0901-04 | 58,500.00 | | 215,992.83 |
| 1/14/2009 | Payment Wire Transfer | | 5,000.00 | 210,992.83 |
| 1/15/2009 | Payment Wire Transfer | | 5,000.00 | 205,992.83 |
| 1/20/2009 | Payment Wire Transfer | | 5,000.00 | 200,992.83 |
| 1/23/2009 | Payment Agent Acct Denmark | | 1,909.03 | 199,083.80 |
| 1/23/2009 | 5th charter Hire Inv. PWSI 0901-11 | 58,500.00 | | 257,583.80 |
| 1/23/2009 | credit Note No PWSCR 0901-01 | | 58,500.00 | 199,083.80 |
| 1/25/2009 | Port Dues & Dep. Exp Inv PWSI 0901-12 | 21,882.59 | | 220,966.39 |
| 1/26/2009 | Payment Wire Transfer | | 8,000.00 | 212,966.39 |
| 2/3/2009 | Transfer to Capt. Orlando Bank | | 1,250.00 | 211,716.39 |
| 2/5/2009 | Payment Wire Transfer | | 800.00 | 210,916.39 |
| 2/7/2009 | 6th Hire Invoice PWSI 0902-04 | 58,500.00 | | 269,416.39 |
| 2/20/2009 | Payment Wire Transfer | | 2,000.00 | 267,416.39 |
| 2/22/2009 | 7th Hire Invoice PWSI 0902-06 | 58,500.00 | | 325,916.39 |
| 3/13/2009 | Payment Wire Transfer | | 3,000.00 | 322,916.39 |
| 3/31/2009 | Charter Invoice PWSI 0903-03 | 78,000.00 | | 400,916.39 |
| 4/1/2009 | 9th Charter Hire Inv. PWSI 0904-01 | 39,000.00 | | 439,916.39 |
| 4/2/2009 | Invoice PWSI 0903 -03 sold | | 78,000.00 | 361,916.39 |
| 4/7/2009 | Payment Wire Transfer | | 2,000.00 | 359,916.39 |
| 4/8/2009 | 10th Charter Hire Inv PWSI 0904-02 | 58,500.00 | | 418,416.39 |
| 4/10/2009 | Payment Wire Transfer | | 1,500.00 | 416,916.39 |
| 4/23/2009 | 11th Charter Hire Inv. PWSI 0904-03 | 58,500.00 | | 475,416.39 |
| 5/8/2009 | 12th Charter Hire | 58,500.00 | | 533,916.39 |
| 5/8/2009 | Payment Wire Transfer | | 2,000.00 | 531,916.39 |
| 5/18/2009 | Payment Wire Transfer | | 1,500.00 | 530,416.39 |
| 5/23/2009 | 13th Charter Hire upto June 7, 2009 | 58,500.00 | | 588,916.39 |
| 6/1/2009 | Payment Wire Transfer | | 1,000.00 | 587,916.39 |
| | Balance Due to Prams Water Shipping | | | 587,916.39 |

Exhibit "C"

JS 44 (Rev. 11/05)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.) **NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.**

## I. (a) PLAINTIFFS

PRAMS WATER SHIPING COMPANY, INC.

**(b)** County of Residence of First Listed Plaintiff: Miami-Dade
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Michael C. Black, Esquire, CASSIDY & BLACK, P.A.
8370 W. Flagler Street, Suite 252, Miami, Florida 33144
(305) 559-4962

09-cv-21508-Jordan/McAliley

## DEFENDANTS

SALCO SHIPPING CORP. a/k/a SALCO SHIPPING, INC., THE SALVADOR GROUP, LTD and SALVADOR & COMPANY, etc.

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT LAND INVOLVED.

Attorneys (If Known)

FILED by ASS D.C.
JUN - 4 2009
STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S. D. of FLA. – MIAMI

(d) Check County Where Action Arose: ☒ MIAMI-DADE ☐ MONROE ☐ BROWARD ☐ PALM BEACH ☐ MARTIN ☐ ST. LUCIE ☐ INDIAN RIVER ☐ OKEECHOBEE ☐ HIGHLANDS

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff
☒ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

**CONTRACT**
☐ 110 Insurance
☒ 120 Marine
☐ 130 Miller Act
☐ 140 Negotiable Instrument
☐ 150 Recovery of Overpayment & Enforcement of Judgment
☐ 151 Medicare Act
☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
☐ 153 Recovery of Overpayment of Veteran's Benefits
☐ 160 Stockholders' Suits
☐ 190 Other Contract
☐ 195 Contract Product Liability
☐ 196 Franchise

**REAL PROPERTY**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers' Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury

PERSONAL INJURY
☐ 362 Personal Injury - Med. Malpractice
☐ 365 Personal Injury - Product Liability
☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
☐ 441 Voting
☐ 442 Employment
☐ 443 Housing/ Accommodations
☐ 444 Welfare
☐ 445 Amer. w/Disabilities - Employment
☐ 446 Amer. w/Disabilities - Other
☐ 440 Other Civil Rights

**PRISONER PETITIONS**
☐ 510 Motions to Vacate Sentence
Habeas Corpus:
☐ 530 General
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**FORFEITURE/PENALTY**
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 R.R. & Truck
☐ 650 Airline Regs.
☐ 660 Occupational Safety/Health
☐ 690 Other

**LABOR**
☐ 710 Fair Labor Standards Act
☐ 720 Labor/Mgmt. Relations
☐ 730 Labor/Mgmt.Reporting & Disclosure Act
☐ 740 Railway Labor Act
☐ 790 Other Labor Litigation
☐ 791 Empl. Ret. Inc. Security Act

**BANKRUPTCY**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**SOCIAL SECURITY**
☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
☐ 870 Taxes (U.S. Plaintiff or Defendant)
☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
☐ 400 State Reapportionment
☐ 410 Antitrust
☐ 430 Banks and Banking
☐ 450 Commerce
☐ 460 Deportation
☐ 470 Racketeer Influenced and Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Sat TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 890 Other Statutory Actions
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 895 Freedom of Information Act
☐ 900Appeal of Fee Determination Under Equal Access to Justice
☐ 950 Constitutionality of State Statutes

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding ☐ 2 Removed from State Court ☐ 3 Re-filed- (see VI below) ☐ 4 Reinstated or Reopened ☐ 5 Transferred from another district (specify) ☐ 6 Multidistrict Litigation ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. RELATED/RE-FILED CASE(S).

(See instructions second page):
a) Re-filed Case ☐ YES ☒ NO b) Related Cases ☐ YES ☒ NO
JUDGE DOCKET NUMBER

## VII. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause **(Do not cite jurisdictional statutes unless diversity)**: Maritime Breach of Charter

LENGTH OF TRIAL via 2 days estimated (for both sides to try entire case)

## VIII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
**DEMAND $** 587,916.39
CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☐ Yes ☒ No

**ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE**

SIGNATURE OF ATTORNEY OF RECORD: Michael C. Black
DATE: 6/3/09

FOR OFFICE USE ONLY
AMOUNT $350.00 RECEIPT # 1002264 IFP
06/04/09