UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-21508-CIV-MARRA/MATTHEWMAN

PRAMS WATER SHIPPING COMPANY, INC.,

Plaintiff,

vs.

THE SALVADOR GROUP, LTD. and
SALVADOR & COMPANY INSURANCE AGENCY,

Defendants.
_____/

**OPINION AND ORDER**

This cause is before the Court upon Defendants' Joint Motion to Dismiss (DE 76) and Plaintiff's Motion for Summary Judgment (DE 82). The motions are fully briefed and ripe for review. The Court has carefully considered the motions and is otherwise fully advised in the premises.

MOTION TO DISMISS

I.  Background

Plaintiff Prams Water Shipping Company, Inc. ("Prams" "Plaintiff") brings this First Amended Complaint ("FAC") against Defendants The Salvador Group, Ltd. ("SGL") and Salvador & Company Insurance Agency ("SCIA") (collectively, "Defendants") for breach of guarantee. (DE 72.) According to the FAC, Plaintiff is the owner of the M/V Durga Maya ("the vessel"). (FAC ¶ 2.) Defendants guaranteed the obligations and debts of Salco Shipping Corp. ("Salco") under a vessel charter of the M/V Durga Maya. (FAC ¶ 3.)

On or about October 10, 2008, Plaintiff entered into a time charter party agreement

("agreement") with Salco, whereby Salco chartered the vessel for two years with a charterer's option for an additional year. (FAC ¶ 4.) Defendants provided a written guarantee of the obligations and/or debts of Salco arising out of the agreement. (FAC ¶ 5.) Salco failed to pay in full the charges owed for the charter hire and expenses of the vessel. Pursuant to an arbitration award, a final judgment was entered against Salco in favor of Plaintiff. (FAC ¶ 6.) Salco has not paid the judgment and has filed a dissolution of its corporate form. (FAC ¶ 7.) Plaintiff seeks to enforce the guarantee and to have the final judgment against Salco paid by Defendants. (FAC ¶ 8.) Defendants refused to honor the guarantee and pay any part of that final judgment. (FAC ¶ 9.)

Attached to the original complaint are three letters. (Ex. B, DE 1.) The first letter is dated March 2, 2009, written on "Horan Associates" letterhead, signed by "John Horan," and addressed to "Jose Ramos" of the "Westmount Group" and "Captain Mahajan." The letter states that the "performance of the [agreement] between Prams Water Shipping and Salco Shipping is guaranteed by the Salvador Group Ltd." (Mar. 2, 2009 letter.)

On March 29, 2009, Paul Salvador, the president of SCIA, wrote a letter addressed "To Whom It May Concern." The letter explains that SCIA was established in 1979 and is structured as an "S" corporation. The letter also explains that its shipping division has been buying space from Plaintiff on its vessel and will continues to do so in the future. Finally, the letter states all the different divisions of SCIA are owned by the Salvador brothers and closely held as the Salvador Group. (Mar. 29, 2009 letter.) Soon thereafter, on April 1, 2009, Paul Salvador wrote a letter to CV Credit Inc. which stated that Mr. Horan, the CFO of SCIA, has authority to sign documents on "our behalf." (Apr. 1, 2009 letter.)

Defendants move to dismiss on the basis of the statute of frauds. They argue that the statute of frauds requires that the guarantee of the debt of another be in writing and signed by the party to be charged, and the letters attached to the FAC are legally deficient. Plaintiff responds that the statute of frauds is an affirmative defense that cannot be raised on a motion to dismiss. In addition, Plaintiff claims that issues of fact preclude the applicability of the statute of frauds at this stage in the proceedings. Plaintiff contends that the personal guaranty falls outside the statute of frauds under the leading object rule, or alternatively, Plaintiff argues that the personal guaranty satisfies the statute of frauds.

II.  Legal Standard

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quotations and citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.  Thus, "only a complaint that states a

plausible claim for relief survives a motion to dismiss." Id. at 1950.  When considering a motion to dismiss, the Court must accept all of the plaintiff's allegations as true in determining whether a plaintiff has stated a claim for which relief could be granted. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

### III. Discussion[1]

The statute of frauds requires a written contract guaranteeing the debt of another to be signed by the person to be charged.  Florida Statute § 725.01; see First Guaranty Corp. v. Palmer Bank and Trust Co. of Fort Myers, N.A., 405 So. 2d 186, 188 (Fla. Dist. Ct. App. 1981).  The writing must contain the essential terms of the transaction, however, several writings may be aggregated to satisfy the statute. First Guaranty, 405 So. 2d at 188. "There is no definitive list of essential terms that must be present and certain to satisfy the statute of frauds. Rather, the essential terms will vary widely according to the nature and complexity of each transaction and will be evaluated on a case by case basis." Ge Lin v. Ecclestone Signature Homes of Palm Beach, LLC, 59 So. 3d 267, 270 (Fla. Dist. Ct. App. 2011).  An affirmative defense, such as the statute of frauds, may be raised in a motion to dismiss pursuant to Rule 12(b)(6) if the defense is apparent from the face of the complaint.[2]  Hudson Drydocks Inc. v. Wyatt Yachts, Inc., 760 F.2d 1144, 1146 n.3 (11th Cir. 1985).

The March 2, 2009 letter signed by Mr. Horan informs the Westmount Group and

---

[1] Defendant applies both Florida and Massachusetts law to this case. Plaintiff states that Florida law should apply because the last act to complete the contract occurred in Florida. Based on the facts alleged, the Court is unable to make this determination, especially since Defendants do not explain why Massachusetts law would apply.  Thus, the Court will apply Florida law.

[2] For this reason, the Court rejects Plaintiff's argument that Defendants cannot raise the statute of frauds defense on a motion to dismiss.

4

Captain Mahajan that the agreement between Prams and Salco is guaranteed by SGL. In the April 1, 2009 letter, the President of SCIA, states that Mr. Horan is the CFO of SCIA and has authority to sign documents on "our behalf." The March 24, 2009 letter explains the "our different divisions" are owned by the Salvador brothers and closely held as "Salvador Group."

The Court finds that, at the motion to dismiss stage, it cannot resolve the question of whether these letters satisfy the statute of frauds. Questions of fact are raised at to whether John Horan was able to bind both Defendants based on his status as CFO of SCIA. These questions require a factual inquiry as to the relationship between SGL and SCIA. The answer to these factual questions are complicated by the fact that the April 1, 2009 letter is on SCIA letterhead and the March 2, 2009 letter is on "Horan Associates" letterhead. Furthermore, assuming arguendo that the March 2, 2009 letter contains a personal guarantee, the Court cannot determine, as a matter of law, whether the language "the performance of the [agreement]" contains all the essential terms of transaction. A more developed factual record is necessary to make these determinations.

Hence, Defendants' motion to dismiss the FAC is denied.

SUMMARY JUDGMENT MOTION

I.  Background

Relevant portions from the factual record, as culled from affidavits, exhibits, depositions, answers, answers to interrogatories, for the purpose of this motion, and viewed in the light most favorable to the non-moving party, are as follows:

On or about October 10, 2008, Prams, the owner of the M/V Durga Maya ("the vessel"), entered into an agreement with Salco whereby Salco, as charterer, agreed to charter the vessel for

two years with an option for an additional year. (Manohar Mahajan Aff. ¶ 4, Ex. A, DE 93; Agreement, Ex. A-2, DE 93-1.) While Plaintiff was required to pay for insurance on the vessel, Salco was to pay for other enumerated expenses. (Agreement ¶¶ 6-7.) In addition, the agreement required that the charter hire be paid every fifteen days in advance and required payment of $117,000 as "hire payment" "in advance before delivery." (Agreement ¶ 11; Mar. 19, 2013 Pl. Ans. to Def. Interrog. ¶ 13, Ex. B, DE 82-2.) The agreement also stated that "The Charterers shall pay for the use and hire of the Vessel . . . commencing on and from the day of her delivery." (Agreement ¶ 10.) The agreement states that if the charter is not paid on time or upon any other breach of the agreement, Plaintiff has the right to withdraw the vessel from Salco. (Agreement ¶ 11.)

Plaintiff claims that Salco failed to pay the required charter hire, only paying part of it in April of 2009. (Mar. 19, 2013 Pl. Ans. to Def. Interrog. ¶ 13.) In contrast, Defendants claim that Salco remitted the first payment in full and one time thereafter. (John Horan Aff. ¶ 12, DE 87.) Defendants also claim that Plaintiff never obtained the necessary insurance required under the agreement and failed to deliver the vessel to Salco.[3] (Horan Aff. ¶ 9-10; Ernest Enos Aff. ¶¶ 7-9, DE 88.) According to Defendants, because Plaintiff never obtained insurance for the vessel, no payment obligation arose.[4] (Horan Aff. ¶¶ 10-11; Enos Aff. ¶¶ 8-10.) Plaintiff states it obtained insurance and there was never any hold over the vessel. (Mahajan Supp. Aff. ¶¶ 13, 31, Ex. A,

---

[3] Defendants state that during the negotiations of the terms of the agreement, they learned that Plaintiff was in debt and would require funds to secure the release of the vessel. (Horan Aff. ¶ 7.)

[4] Nonetheless, Defendants state that although Plaintiffs did not deliver the vessel to Salco, Salco continued to make payments to Plaintiff in an effort to gain the release. (Horan Aff. ¶ 12.)

DE 98-1; Ex. 25, Insurance, DE 98-2.)

According to Plaintiff, in or about September 2008, prior to entering into the agreement, Plaintiff commenced negotiations with Salco. During the course of the negotiations, Salco's background information was requested as a standard practice of the trade. Salco presented a document which stated that (1) the owners are Paul J. Salvador and Walter W. Salvador; (2) John Horan is the financial manager; (3) Salco is financially backed by the owners' individual credit and net worth; (4) Salco is one of five active companies wholly owned by Paul J. Salvador and Walter W. Salvador. The document also stated that among the wholly owned active companies are SGL and SCIA. (Sept. 28, 2008 memorandum, Ex. A-1, DE 93-1.) Defendants state that the purpose of the document was simply to provide requested information to Plaintiff and was not intended to create an appearance that the companies separately listed in it constituted one business entity or that all these entities would combine their finances to guarantee Salco's obligations under the agreement. (Horan Aff. ¶ 6.)

According to Plaintiff, during the negotiations and execution of the agreement, all financial matters were handled by Mr. Horan, who was identified as the chief financial officer ("CFO") of the "Salvador Umbrella of Companies."[5] (Mahajan Aff. ¶ 5.) The agreement was signed by Mr. Horan as CFO. (Mahajan Aff. ¶ 6; Agreement ; Horan Aff. ¶ 8.)

According to Plaintiff, in January and February of 2009, when Salco was falling behind on its charter hire payments and obligations, Plaintiff retained the Westmount Group to carry out a credit check on Salco but no information could be found on Salco. (Mahajan Aff. ¶ 8; Mar. 19,

---

[5] Defendants state that John Horan was not the CFO of the "Salvador Umbrella of Companies" because that entity does not exist. (Horan Aff. ¶ 4.)

2013 Pl. Ans. to Def. Interrog. ¶ 20.)  Plaintiff raised with Mr. Horan and Mr. Paul Salvador the lack of financial information regarding Salco and "expressed the necessity to withdraw the vessel." (Mahajan Aff. ¶ 9.)  Defendants dispute this, stating that such a conversation never took place and Plaintiff never threatened to withdraw the vessel from service. (Horan Aff. ¶ ¶ 14, 24.)

      Plaintiff claims that subsequent to that conversation, Mr. Horan and Mr. Paul Salvador advised that Salco, SCIA and SGL were all one and the same entity, all of them being S corporations and all being owned by the same two Salvador brothers. (Mahajan Aff. ¶ 10; Mar. 19, 2013 Pl. Ans. to Def. Interrog. ¶ 20.)  In support, Defendants presented letters and financial statements of owners, the various Salvador companies, and corporate papers of all the companies to show that the companies were one and the same and Plaintiff should rely on the composite financials of all the companies together. (Mar. 19, 2013 Pl. Ans. to Def. Interrog. ¶ 20; Feb. 9, 2009 letter from John Horan to The Composite Salvador Companies, Ex. A-3, DE 93-1; Salvador Cos. Composite Statement of Net Worth Dec. 31, 2008, Ex. A-5, DE 93-1; Feb. 10, 2009 personal financial documents of Paul and Walter Salvador, Ex. A-6, DE 93-1.)  In addition, Mr. Horan sent documents from the state of Massachusetts showing the length of time that each of the corporations had been in operation and that the owners of all of the corporations are the Salvador brothers. (Massachusetts documents, Ex. A-7, DE 93-1.)  These documents convinced Plaintiff that the Salvador group of companies was a composite group of companies which were all one and the same and interchangeable and could financially stand behind the agreement. (Mahajan Aff. ¶ 11.)

      Based on that information, Plaintiff then sought a guaranty from the Salvador Group of

Companies. (Mahajan Aff. ¶¶ 12-13; Mar. 19, 2013 Pl. Ans. to Def. Interrog. ¶ 7.)  A letter dated March 2, 2009, signed by Mr. Horan to the Westmount Group and Plaintiff's president, Manohar Mahajan, stated that the agreement between Plaintiff and Salco was guaranteed by the SGL. (Mar. 2, 2009 letter, Ex. D, DE 82.)  On March 24, 2009 Paul Salvador, as president, sent a letter "To Whom It May Concern" stating that all Salvador companies are S corporations, owned by the Salvador brothers and closely held as the Salvador Group.  There are different divisions, including shipping.  The letter states that SCIA was established in 1979 and "we" have diversified into other business areas and that since the capacity of another smaller vessel could not meet "our" demand, "we" have been trying to buy space from Plaintiff on its vessel.  (Mar. 24, 2009 letter, Ex. E, DE 82.)  An April 1, 2009 letter from Paul Salvador on SCIA letterhead advised that Mr. Horan is the CFO and has authority to sign documents on "our" behalf. (Apr. 1, 2009 letter, Ex F, DE 82.)

In contrast, Defendants state that, in an effort to help Plaintiff raise funds through the Westmount Group, Mr. Horan emailed the Westmount Group and supplied it with records. (Horan Aff. ¶ 17; Emails between Horan and Jose Ramos, Ex. B to Horan Aff., DE 87-2.)  The documents produced and referred to <u>supra</u> by Plaintiff were provided to assist Plaintiff with securing additional funding needed to secure release of the vessel. (Horan Aff. ¶ 18.)  For example, a February 17, 2009 email from Mr. Mahajan instructed Mr. Horan to email the Westmount Group and state that Salco is part of the composite Salvadore companies.[6]  (Horan

---

[6] Defendants' CFO states that he is aware of no entity named the "composite Salvador companies," the "Salvadore Group of Companies," or the "Salvador Umbrella." (Horan Aff. ¶ 4.) The director of SCIA, SGL, and Salco states that each company is separate from each other, has its own purpose and function, maintain its own banking accounts, and files its own tax returns. (P. Salvador Aff. ¶¶ 2-4, DE 89.)

Aff. ¶ 20; Feb. 17 email, Ex. C to Horan Aff., DE 87-5.)  Next, on February 27, 2009, Mr. Mahajan emailed Mr. Horan and asked him to have Salco inform Westmount Group that Salco's performance under the agreement is guaranteed by SGL. (Horan Aff. ¶ 22; Feb. 27, 2009 email, Ex. D to Horan Aff., DE 87-6.)  Based on that request, Mr. Horan drafted the March 2, 2009 letter referred to by Plaintiff.[7] (Horan Aff. ¶ 23.)  According to Defendants, SGL never guaranteed Salco's performance under the agreement in favor of Plaintiff.[8]  (Horan Aff. ¶ 26; Salvador Aff. ¶ 7; SGL Ans. to Interrog. ¶ 16.)

According to Plaintiff, had they not gotten the guaranty, Plaintiff would have withdrawn the vessel and terminated agreement. (Mar. 19, 2013 Pl. Ans. to Def. Interrog. ¶ 7.)  Plaintiff states that after issuing the guaranty, the composite Salvador companies told Plaintiff that the group was having financial difficulties. (Mar. 19, 2013 Pl. Ans. to Def. Interrog. ¶ 13; Mar. 3, 2009 letter, Ex. G, DE 82.)  Plaintiff made several demands for payment and a response from Defendants was received in the form of several small payments, in the month of June and July 2009.  A written demand was sent to Salco, SGL, SCIA by counsel for Plaintiff on May 15, 2009. No response was received.  (Mar. 19, 2013 Pl. Ans. to Def. Interrog. ¶ 14.)

Plaintiff initiated arbitration in January of 2010.  On October 1, 2010, the arbitration panel issued an award in Plaintiff's favor, awarding $2,591,683.90 as principal damages.  (Final Arbitration Award.)  The Court confirmed the arbitration award in the amount of $2,575,946.40

---

[7] The Westmount Group declined to extend credit or loan money to Plaintiff . (Horan Aff. ¶ 25.)

[8] With respect to the April 1, 2009 letter, Defendants state that Mr. Mahajan requested that letter to help Plaintiff obtain additional funding.  (Horan Aff. ¶ 30; Apr. 1, 2009 email, Ex. F, DE 82-6.)

as to Salco and final judgment was entered against Salco on February 23, 2010. (DE 50 and 51.) Plaintiff has received no payment. (Mahajan Aff. ¶ 17.)

III. Discussion[9]

Under Florida law, rules applicable to contracts generally apply to guaranty contracts. Warner v. Caldwell, 354 So. 2d 91, 96 (Fla. Dist. Ct. App. 1977); Lockheed Martin Corp. v. Galaxis USA, Ltd., 222 F. Supp.2d 1315, 1325 (M.D. Fla. 2002). The elements for a breach of contract claim are (1) a valid contract; (2) a material breach and (3) damages. J.J. Gumberg Co. v. Janis Svcs., Inc., 847 So. 2d 1048, 1049 (Fla. Dist. Ct. App. 2003). To have a valid contract consideration is required. Dickinson v. Auto Center Mfg. Co., 639 F.2d 250, 252 (5th Cir. 1981);[10] Frissel v. Nichols, 114 So. 403, 410 (1927). "[T]he consideration required to support a contract need not be money or anything having monetary value, but may consist of either a benefit to the promisor or a detriment to the promisee." Real Estate World Florida Commercial, Inc. v. Piemat, Inc., 920 So. 2d 704, 706 (Fla. Dist. Ct. App. 2006) (citing Lake Sarasota, Inc. v. Pan Am. Sur. Co., 140 So.2d 139, 142 (Fla. Dist. Ct. App. 1962)).

The Court finds that there are numerous factual questions which preclude a finding that a valid guaranty exists as a matter of law. For example, with respect to consideration, Plaintiff argues that Defendants undertook an obligation which they were not already expressly bound to

---

[9] The parties agree that jurisdiction is based on diversity of citizenship. Both parties apply Florida law.

[10] The decisions of the United States Court of Appeals for the Fifth Circuit, as that court existed on September 30, 1981, handed down by that court prior to the close of business on that date, shall be binding as precedent in the Eleventh Circuit, for this court, the district courts, and the bankruptcy courts in the circuit. Bonner v. Pritchard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

undertake when they guaranteed the debts of Salco under the agreement and Plaintiff agreed not to terminate the agreement in exchange for the guaranty.  While Plaintiff points to evidence that it "expressed" to Defendants "the necessity to withdraw the vessel," Defendants dispute this fact. (Mahajan Aff. ¶ 9.)  Instead, they state that such a conversation never took place and Plaintiff never threatened to withdraw the vessel from service and therefore did not give up anything. (Horan Aff. ¶ ¶ 14, 24.)  Defendants also point to record evidence that Plaintiff never obtained the necessary insurance required under the agreement and failed to deliver the vessel to Salco and therefore had no right or ability to give up anything with respect to the agreement. (Horan Aff. ¶ 9-10; Enos Aff. ¶ ¶ 7-9.)   Because it is unclear whether Plaintiff had a legal right to give up and/or actually agreed to give up its right to terminate the agreement, the Court cannot decide, as a matter of law, whether there was valid consideration. See Citibank Intern. v. Mercogliano, 574 So. 2d 1190, 1191 (Fla. Dist. Ct. App. 1991) ("It is well settled [under] Florida law that forbearance from pursuing a legal remedy, where the promisee has a bona fide belief that a viable legal right exists, constitutes valid consideration for an agreement which benefits the promisor.")

      Likewise, factual disputes prevent the Court from determining, as a matter of law, whether Defendants actually agreed to guarantee the debts of Salco. According to Plaintiff, a March 2, 2009 letter was addressed to Plaintiff's president and the Westmount Group, signed by Mr. Horan, had a subject line of "Re: SalCo Shipping Inc." and states that "This letter is to confirm that the performance of the [agreement] between [Plaintiff] and Salco [ ] is guaranteed by the Salvador Group, Ltd."  Plaintiff contends that this letter was clearly intended to be a guaranty.

In contrast, Defendants claim that the March 2, 2009 letter was part of a series of letters that they provided solely to help Plaintiff raise funds through the Westmount Group which would allow Plaintiff to secure the release of the vessel. In support, Defendants point to a February 27, 2009 email from Plaintiff's president which asked Mr. Horan to write a letter to the Westmount Group stating the performance of the agreement is guaranteed by SGL. (Horan Aff. ¶ 22; Feb. 27, 2009 email, Ex. D to Horan Aff.)  Defendants claim that this request was the only reason they drafted the March 2, 2009 letter and that they never actually guaranteed Salco's performance under the agreement in favor of Plaintiff. (Horan Aff. ¶¶ 23, 26; Salvador Aff. ¶ 7; SGL Ans. to Interrog. ¶ 16.)  The Court cannot resolve this conflict on a motion for summary judgment.

The Court also notes that, even assuming <u>arguendo</u> that Plaintiff's version of the facts could be credited, factual issues remain as to whether the March 2, 2009 letter, which only mentioned SGL, could be applied to SCIA.  To be sure, Plaintiff claims that John Horan and Paul Salvador advised that Salco, SCIA and SGL were all one and the same entity, all of them being S corporations and all being owned by the same two Salvador brothers. (Mahajan Aff. ¶ 10; Mar. 19, 2013 Pl. Ans. to Def. Interrog. ¶ 20.)  Plaintiff also claims that the March 23, 2009 letter and the April 1, 2009 letter demonstrate the interrelatedness of SGL and SCIA.[11]  On the other hand, Mr. Horan states that he is unaware of any entity named the "composite Salvador companies,"

---

[11] The March 23, 2009 letter states that SCIA was established in 1979 and "we" have diversified into other business areas and that since the capacity of another smaller vessel could not meet "our" demand, "we" have been trying to buy space from Plaintiff.  (Mar. 24, 2009 letter, Ex. E, DE 82.)  An April 1, 2009 letter from Paul Salvador on SCIA letterhead advised that John Horam is the CFO and has authority to sign documents on "our" behalf. (Apr. 1, 2009 letter, Ex F, DE 82.)

the "Salvadore Group of Companies," or the "Salvador Umbrella" and Mr. Salvador states that each company (i.e., SCIA, SGL, EHS Shipping, Inc., Salvador & Company Real Estate Corporation and Salco) is separate from each other, has its own purpose and function, maintain its own banking accounts, and files its own tax returns (Horan Aff. ¶ 4; Salvador Aff. ¶ ¶ 2-4.)

This factual dispute regarding the relationship between the two defendant entities also relates to whether the purported guaranty is barred by the statute of frauds. If a fact finder were to decide that the entities are interrelated, and the March 23, 2009 letter and the April 1, 2009 spoke to this interrelatedness, then these documents, along with the March 2, 2009 letter, could be aggregated for statute of frauds purposes. See Kolski ex rel. Kolski v. Kolski, 731 So. 2d 169, 171 (Fla. Dist. Ct. App. 1999) (quoting Cook v. Theme Park Ventures, Inc., 633 So.2d 468, 471 (Fla. Dist. Ct. App. 1994) ("for purposes of the statute of frauds, several writings, only one of which is signed by the debtor, may be aggregated to satisfy the statute provided that the signed writing expressly or implicitly refers to the unsigned document.") However, the Court cannot rule on the applicability of the statute of frauds until this factual dispute regarding interrelatedness is resolved.[12]

With respect to Defendants' argument that the doctrine of unclean hands prevents Plaintiff from seeking relief, the Court observes that the application of this doctrine requires the resolution of disputed facts and therefore is ill-suited at the summary judgment stage. Cohen v. Kravit Estate Buyers, Inc., 843 So. 2d 989, 992 (Fla. Dist. Ct. App. 2003) (citing Dery v. Occhiuzzo and Occhiuzzo Enterprises, Inc., 771 So. 2d 1276, 1279 (Fla. Dist. Ct. App. 2000)).

---

[12] Because of these factual issues, the Court cannot address whether the guaranty falls out of the statute of frauds by virtue of the "leading object rule." (Reply at 19.)

Moreover, the Court notes that unclean hands only applies to claims for equitable relief and Plaintiff seeks damages. Mitchell Bros. Film Group v. Cinema Adult Theater, 604 F.2d 852, 865 n.26 (5th Cir. 1979); Cocquina Investments v. Rothstein, No. 10–60786–Civ, 2011 WL 4971923, at * 15 (S.D. Fla. Oct. 19, 2011).

Lastly, the Court addresses Plaintiff's claim that the arbitration award against Salco, which was confirmed by the Court, bars the re-litigation of the breach of the agreement and the issues related thereto under the doctrine of res judicata. Specifically, Plaintiff seeks to preclude any defenses that rely on the alleged failure of Plaintiff to comply with the agreement, including the alleged failure to obtain insurance or deliver the vessel into service. To assert the bar of res judicata, Plaintiff must show, under New York law,[13] that "final disposition on the merits bars litigation between the same parties of all other claims arising out of the same transaction or out of the same or related facts, even if based upon a different theory involving materially different elements of proof. The rule applies not only to claims litigated but also to claims that could have been raised in the prior litigation." Shelley v. Silvestre, 66 A.D.3d 992, 993 (N.Y. App. Div. 2009). Here, too many factual questions remain as to the relationship between Salco and Defendants. Indeed, Defendants point to evidence that Salco is separate from the Salvador corporations. (P. Salvador Aff. ¶ ¶ 2-4.) Thus, the Court cannot determine, as a matter of law, whether Salco is in privity with Defendants.[14]

---

[13] Pursuant to the arbitration agreement, the arbitration occurred in New York. When a district court is asked to give res judicata effect to a state court judgment, it "must apply the res judicata principles of the law of the state whose decision is set up as a bar to further litigation." Kizzire v. Baptist Health System, Inc., 441 F.3d 1306, 1308 (11th Cir.2006).

[14] The Court denies Defendants' motion for summary judgment. First, Defendants belatedly move for summary judgment in their response memorandum. Because Defendants did

<u>IV.  Conclusion</u>

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1)      Defendants' Joint Motion to Dismiss (DE 76) is **DENIED.**

2)      Plaintiff's Motion for Summary Judgment (DE 82) is **DENIED**.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 11th day of July, 2013.

_____
KENNETH A. MARRA
United States District Judge

---

not seek leave from the Court to file this motion after the dispositive motion deadline, the motion is denied.  In any event, too many factual issues remain to grant summary judgment for either party.